## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **KHALIL BURNETT**, | **CIVIL ACTION** |
| Petitioner, | |
| *v.* | **NO. 21-3607-KSM** |
| **ERIC T. ARMEL, et al.**, | |
| Respondents. | |

## MEMORANDUM

**Marston, J.**                                                      **February 26, 2025**

Khalil Burnett is serving a sentence of 12 to 32 years for criminal trespass, possession of a firearm by a minor, and aggravated assault.  In August 2021, Burnett filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions.  (Doc. No. 1.)  The Court referred this petition to the Honorable Magistrate Judge Elizabeth T. Hey. (Doc. No. 2.)  The petition was subsequently reassigned to the Honorable Magistrate Judge Pamela A. Carlos.  (Doc. No. 10.)  Now before the Court are Judge Carlos's Report and Recommendation ("R&R") (Doc. No. 20) and Burnett's objections to the R&R (Doc. No. 25). For the reasons set forth below, the Court overrules Burnett's objections, adopts the R&R, and dismisses Burnett's claims with prejudice and without an evidentiary hearing.

## I.    Background

### A.    Factual Background

The Pennsylvania Superior Court recounted the following factual background when ruling on Burnett's direct appeal:

Ms. Rosemarie Schrader testified that she has resided on the 7300 block of Garman Street in the City of Philadelphia all of her life. She described her home as being in the middle of a typical residential block of row homes with an elevated open front porch. On the evening of October 4, 2008, while she was sitting alone on her porch going through her mail between the hours of 8:00 and 9:00 p.m., she heard "a cluster what I thought was fireworks." She looked up at the sound and saw two "kids" in white T-shirts, coming from her left, running down the middle of Garman Street, away from the direction of the "fireworks," and turn right onto Berbro Street at the end of the block. She then looked in the opposite direction to where she had heard the noises coming from. She saw a taller "kid," wearing a dark "Dickies type uniform," standing alone very near a street light diagonally across the street from her. He was yelling "Go ahead and run [. . .] pussies, pussy, something like that." She also described him as standing with his hand "outstretched" toward Bialy Street, at the other end of the block, when she saw a flash from his right hand which she immediately recognized it as a "gunshot." This person then ran in the same direction as the other two and also turned right onto Berbro Street.

Ms. Shrader testified that, although she did not see the gun, she did see the distinct flash of a gun and heard the sound of its discharge. After seeing the flash, she then looked further up the block toward Bialy where she saw "a shadow, like somebody was running." She remembered "they were towards the corner . . . . It was more towards corner."

Shortly afterwards she saw a dark-colored Caravan come down Garman Street and then turn right onto Berbro Street. She then heard the vehicle proceed up the alley way [sic] behind her house and turn left onto Bialy Street going the wrong way on a one way street.

Detective Keith Scott testified that on the evening of October 14, 2008, he was a police officer on patrol in plain clothes [in] an unmarked police vehicle with his partner when he received a radio call, at approximately 9:00 p.m., alerting him to a shooting in the area of the 7300 block of Garman Street. He also received information regarding two Black males, one wearing a white shirt and the other a dark shirt, who might have been victims of the shooting. On arriving at Berbro Street he immediately observed two males matching this description go up the steps of 2602 Berbro, enter the enclosed front porch and exit three to five seconds later. Identifying himself, Detective Scott approached [Mr. Burnett, one of the men who entered the enclosed porch], whereupon [Mr. Burnett] declared he had been shot. Detective Scott testified that [Mr. Burnett] was wearing a blue uniform with the word "Dickies" on one of the pockets and that he did not observe anyone else in similar clothes.

On learning that [Mr. Burnett] did not live at the premises, Detective Scott searched the interior of the enclosed porch and discovered the butt of a gun protruding from a lawnmower bag "like somebody attempted to throw it inside the bag." On discovering the gun, Detective Scott had [Mr. Burnett] escorted to the hospital because "there was a chance that instead of being a victim [Mr. Burnett] would possibly be placed under arrest."

Police Sergeant Philip McAlorum testified that he was the first supervisor on the scene and that when he arrived at 2602 Berbro Street, Officer Scott had already detained [Mr. Burnett]. He described [Mr. Burnett] as having been "shot in his upper left leg" and wearing a "full, navy blue, what on the street would be called a Dickies set. Identically matching blue shirt and blue pants, like a mechanic's outfit, mechanic's uniform." Sergeant McAlorum further testified that [Mr. Burnett] gave him a "limited description of the people he believed shot him, as well as several locations as to where it happened." [Mr. Burnett] identified the locations relating to this incident as . . . 2602 Berbro Street, the middle of the block of Garman Street, and the intersection of Garman and Bialy Streets.

Ms. Edna B. Turner testified that she is the owner of 2602 Berbro Street and that the property was unoccupied in October 2008. She also testified that she and her granddaughter had been to the property, mowed the lawn and checked to make sure it was secure on the morning of October 14, 2008.

Detective Timothy McCool testified that he was assigned to investigate this shooting incident of October 14, 2008, and that, as part of his investigation, he recovered a .45 caliber revolver from the enclosed front porch of 2602 Berbro Street containing "six .45 caliber FCCs; they are fired casings." In addition to the revolver, Detective McCool also recovered sixteen FCCs, all within twenty feet of each other, from the vicinity of the intersection of Garman and Bialy Streets. He testified that these casings consisted of "three .40 caliber FCCs; seven RMP .380 auto FCCs; and six RMP .32 auto FCCs." In addition to the casings, he also recovered a projectile nearby on the 7300 block of Garman Street. Detective McCool testified that, including the revolver, "I think there were four different weapons fired that day."

Detective David Tighe testified he was the lead detective assigned to investigate this shooting incident. As part of his investigation, he personally inspected the area around the lightpost in the middle of the 7300 block of Garman Street and did not find any fired cartridge casings.

Police Officer Raymond Andrejczak testified that he is assigned to the Philadelphia Police Department's Firearm Identification Unit. He explained that when a revolver is fired "you would not expect to have fired cartridge cases where a revolver was fired," whereas a semiautomatic ejects [any] fired cartridge cases out from the firearm." Officer Andrejczak tested the revolver recovered and found it to be operable. He further testified that, although the six casings recovered from the revolver had been fired from the same revolver, he was unable to determine with scientific certainty that they were shot from that revolver, although it was most likely that they had been.

*Commonwealth. v. Burnett,* No. 3498 EDA 2012, 2014 WL 10979624, at *1–2 (Pa. Super. Ct. Mar. 28, 2014) ("*Burnett I*") (internal citations and footnotes omitted).

At trial, Burnett decided not to testify and instead presented testimony from his cousin. *Commonwealth v. Burnett*, 260 A.3d 159 (Pa. Super. Ct. 2021) ("*Burnett II*"). His cousin testified that "he had been standing outside on Garman Street with Burnett and another person on the night of the shooting when somebody threw a hood on [and] started shooting. *Id.* (internal quotations omitted). The trio ran away, and after they rounded a corner, Burnett told the group that he had been shot. *Id.*

Despite his cousin's testimony, the jury convicted Burnett of "criminal trespass, possession of a firearm by a minor and aggravated assault" in June 2012. *Id.* That fall, "he was sentenced to consecutive terms of three to seven years' imprisonment for criminal trespass, two to five years' imprisonment for possession of a firearm by a minor, and seven to twenty years' imprisonment for aggravated assault." *Burnett I*, 2014 WL 10979624, at *3. In total, the court sentenced him to "12 to 32 years' imprisonment." *Burnett II*, 260 A.3d at 159.

## B. Procedural History

### 1. Direct Appeal

Burnett appealed his conviction to the Pennsylvania Superior Court on two grounds: (1) that his counsel was ineffective for failing to ask for a self-defense jury instruction and (2) that there was insufficient evidence to support his aggravated assault conviction. *See Burnett I*, 2014 WL 10979624, at *3. The Superior Court rejected both claims. It found that the former ground was premature because his ineffective assistance of counsel claim must be raised on collateral review, not direct review. *Id.* On the latter ground, the Court held that Burnett had waived his challenge to the sufficiency of the evidence because he failed "to specify the element

5

or elements upon which the evidence was insufficient for his aggravated assault conviction" as required by Pennsylvania Rule of Appellate Procedure 1925(b). *Id.* (internal quotations omitted). And, in the alternative, the Court found that even if he had properly raised this issue, it was meritless. *Id.* at *4–5. Burnett did not appeal to the Pennsylvania Supreme Court.

## 2.    State Collateral Review Proceeding

After his unsuccessful direct appeal, Burnett timely filed a pro se petition for post-conviction collateral relief under Pennsylvania's Post Conviction Relief Act ("PCRA"). *Commonwealth v. Burnett*, No. 2662 EDA 2017, 2019 WL 1977340, at *3 (Pa. Super. Ct. May 3, 2019) ("*Burnett III*"). The PCRA court appointed counsel who filed an amended petition on Burnett's behalf. *Id.* In his amended petition, Burnett challenged the legality of his sentence and raised two ineffective assistance of counsel claims based on trial counsel failing to (1) argue self-defense or request a self-defense jury instruction and (2) object to the lack of a no adverse inference instruction related to Burnett's decision not to testify in his own defense.[1] *Id.* The PCRA court dismissed the petition without a hearing. *Id.*

Burnett then appealed the PCRA court's decision. *Burnett II*, 260 A.3d at 159. The Pennsylvania Superior Court affirmed the dismissal of Burnett's sentencing challenge and his ineffective assistance of counsel claim based on trial counsel's failure to object to the lack of a no adverse inference jury instruction. *Id.* But the appellate court vacated the PCRA court's decision as to Burnett's claim that trial counsel was ineffective for failing to argue self-defense and failing to invite the jury to consider it. *Id.* The court reasoned that the PCRA court needed to hold an "evidentiary hearing to determine if trial counsel had a reasonable basis upon which to not

---

[1] Though the Pennsylvania Superior Court and Judge Carlos later describe this petition as raising three ineffective assistance of counsel claims, the Superior Court opinion from May 3, 2019, described his petition as raising two ineffective assistance of counsel claims and a free-standing challenge to this sentence. *See Burnett III*, 2019 WL 1977340, at *3, 7–8.

pursue a self-defense claim on [Burnett's] behalf, and whether there is a *reasonable probability* that the outcome of the trial would have been different if the jury had the option available of finding that Appellant acted in self-defense." *Burnett III*, 2019 WL 1977340, at *7.

At the Superior Court's direction, the PCRA court held an evidentiary hearing on March 5, 2020. *Burnett II*, 260 A.3d at 159. Both Burnett and his trial counsel testified at the hearing. *Id.* Burnett's trial counsel testified that in the lead-up to trial, he and Burnett had discussed self-defense twice. *Id.* Both times, however, Burnett insisted that he did not have a gun that night and told counsel not to pursue a self-defense theory. *Id.* Burnett also accused counsel of "trying to throw him underneath the bus by trying to have him admit he had a gun and presenting a self-defense claim." *Id.* (internal quotations omitted). At the hearing, Burnett claimed that his lawyer never talked to him about self-defense. *Id.* Ultimately, the PCRA court credited counsel's testimony over Burnett's and dismissed the petition. *Id.* The Pennsylvania Superior Court then affirmed. *Id.*

### 3.     Federal Habeas Proceeding

Once his state collateral review proceedings ended, Burnett filed the present habeas petition in federal court. (Doc. No. 1.) In it, he raises four claims for relief: "(1) trial counsel was constitutionally ineffective for not requesting a self-defense jury instruction [or, more generally, arguing self-defense]; (2) trial counsel was constitutionally ineffective for not requesting a no adverse inference instruction; (3) his sentence is illegal because it is based on an unconstitutional mandatory minimum; and (4) there was insufficient evidence to support the aggravated assault conviction."[2]  (Doc. No. 20 at 5–6 (internal quotations omitted).) This Court

---

[2] As Judge Carlos explains in her R&R, the record plainly refutes Burnett's claim that his trial counsel failed to request a no adverse inference jury instruction. (Doc. No. 20 at 14 n.16.) Nevertheless, Burnett's habeas petition still alleges an ineffective assistance of counsel claim for trial counsel's failure to object to the lack of a no adverse inference jury instruction.

referred his petition to the Honorable Magistrate Judge Elizabeth T. Hey (Doc. No. 2), and it was subsequently reassigned to the Honorable Magistrate Judge Pamela A. Carlos (Doc. No. 10).

Before the Commonwealth responded to the petition, the parties were allowed to engage in voluntary discovery. (Doc. No. 9.) After this short discovery window had closed, Burnett chose not to supplement his habeas petition. The Commonwealth responded (Doc. No. 18), and Judge Carlos issued her R&R on December 12, 2024 (Doc. No. 20). In her R&R, Judge Carlos found that the state courts reasonably rejected Burnett's ineffective assistance of counsel claims and his illegal sentence claim. (*Id.* at 10–23.) And she found that Burnett's remaining claim— the sufficiency of the evidence challenge—was procedurally defaulted because the state courts rejected it on an independent and adequate state ground. (*Id.* at 23–24.) Judge Carlos thus recommended that the Court dismiss Burnett's petition with prejudice and without an evidentiary hearing. (*Id.* at 24.)

Burnett timely filed objections to the R&R on January 2, 2025. (Doc. No. 25.) Burnett objects to the conclusion reached by Judge Carlos on each claim in his habeas petition. (*Id.* at 2– 10.) As explained below, none of these objections persuade, so the Court will adopt and approve Judge Carlos's R&R.

## II.    Standard of Review

### A.    Standards Governing Review of a Magistrate Judge's R&R

"In the Eastern District of Pennsylvania, Local Rule 72.1.IV(b) governs a petitioner's objections to a magistrate judge's report and recommendation." *Piasecki v. Ct. Com. Pl. of Bucks Cnty.*, Civil Action No. 14-7004, 2021 WL 1105338, at *3 (E.D. Pa. Mar. 23, 2021). Under that Rule, a petitioner must "specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections." *Id.*

(quoting *Savior v. Superintendent of Huntingdon SCI*, No. 11-cv-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012)).

When a party objects to a magistrate judge's findings, the district court must make "a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 673 (1980). "*De novo* review is non-deferential and generally permits the district court to conduct an 'independent review' of the entire matter." *Piasecki*, 2021 WL 1105338, at *3. "Although review is *de novo*, [a district judge is] permitted, by statute, to rely upon the magistrate judge's proposed findings and recommendations to the extent [the judge], in the exercise of sound discretion, deem[s] proper." *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993) (citing *Raddatz*, 477 U.S. at 676). After reviewing the magistrate judge's conclusions, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations" and "receive further evidence, or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *Raddatz*, 447 U.S. at 673–74.

"Objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review" and should be overruled. *Gray v. Delbiaso*, Civil Action No. 14-4902, 2017 WL 2834361, at *4 (E.D. Pa. June 30, 2017); *see also Prout v. Giroux*, Civil Action No. 14-3816, 2016 WL 1720414, at *11 (E.D. Pa. Apr. 29, 2016) ("Where objections do not respond to the Magistrate's recommendation, but rather restate conclusory statements from the original petition, the objections should be overruled."). Also, where a petitioner fails to "identify with specificity any legal or factual errors in the R&R," the R&R is reviewed for clear error. *Lee v. Houtzdale SCI*, 798 F.3d 159, 162 (3d Cir. 2015); *see also Kennedy v. Borough of Minersville*, No. 3:19-CV-0124, 2019 WL 4316218, at *1 (M.D. Pa. Sept.

11, 2019) ("In particular, Plaintiff does not take issue with the substance of any of the Magistrate

Judge's conclusions and/or recommendations.  As such, the Report and Recommendation is

reviewed for clear error, and finding none, it will be adopted."); *Guzman v. Rozum*, No. CV 13-

7083, 2017 WL 1344391, at *9 (E.D. Pa. Apr. 12, 2017) (explaining that "federal district courts

are not required to engage in *de novo* review of objections to a Magistrate's R&R that lack

specificity").

> B.    **Habeas Standard**

>> 1.    **Exhaustion**

A petitioner for a writ of habeas corpus must exhaust his remedies at the state level

before he can present his claims in federal court.  28 U.S.C. § 2254(b)(1)(A).  If "he has the right

under the law of the State to raise, by any available procedure, the question presented," then the

petitioner has not exhausted his state court remedies.  *Id.* § 2254(c).  The exhaustion requirement

"ensures that the same method of legal analysis that is used by the federal court in resolving the

petitioner's claim was also readily available to the state court when it adjudicated the claim."

*Landano v. Rafferty*, 897 F.2d 661, 669 (3d Cir. 1990).  Federal courts must rigorously enforce

this requirement out of respect for the principles of comity and federalism.  *Rose v. Lundy*, 455

U.S. 509, 510 (1982); *see also Engle v. Isaac*, 456 U.S. 107, 128 (1982) ("The States . . . hold the

initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal

trials frustrate both the States' sovereign power and their good-faith attempts to honor

constitutional law.").

The petitioner bears the burden of demonstrating each of his claims has been exhausted.

*Rose*, 455 U.S. at 515.  Satisfying this burden involves establishing that the federal claims were

"fairly presented" to the state courts.  *Picard v. Connor*, 404 U.S. 270, 275 (1971).  To establish

fair presentation, "it is not enough that the petitioner present[ed] to the state court the facts upon which a federal claim is based." *Brown v. Cuyler*, 669 F.2d 155 (3d Cir. 1982) (per curiam). Rather, the petitioner must have "provide[d] the state courts with both the same legal theory and the same factual predicate underlying the constitutional argument." *Landano*, 897 F.2d at 669. If the state courts have not been given "one full opportunity" to address the claim being pursued in the federal habeas proceeding, then the claim was not fairly presented. *Rose*, 455 U.S. at 515. In such an instance, the claim is considered unexhausted and must be dismissed so that the state court can consider it in the first instance. *Id.*

### 2.    Procedural Default

Where a petitioner's claim is unexhausted, but state procedural rules would bar him from obtaining relief in the state courts, the claim is considered procedurally defaulted. *Keller v. Larkins*, 251 F.3d 408, 413 (3d Cir. 2001). Procedural default also occurs if the claim was exhausted, and the state court ruling was based on an independent and adequate state rule. *Gray v. Netherland*, 518 U.S. 152, 162 (1996). An independent state-law ground is one that is not "interwoven with the federal law." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991). It could be "a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Walker v. Martin*, 562 U.S. 307, 316 (2011). Meanwhile, an adequate state rule is one that is "firmly established and regularly followed." *Beard v. Kindler*, 558 U.S. 53, 60 (2009). To be "firmly established," the state rule must clearly warn the defendant of the rule and its consequences; and to be "regularly followed," the state rule must be one that is consistently cited in similar cases or used in other federal and state habeas courts across the country. *Johnson v. Lee*, 578 U.S. 605, 608–09 (2016). An adequate state rule can exist even if it does not apply in every habeas case. *See Beard*, 558 U.S. at 60–61 (noting that "the appropriate exercise of

discretion may permit consideration of a federal claim in some cases but not others").  If the decision of the highest state court to which the petitioner presented his federal claims was not based "primarily on . . . [or] interwoven with federal law," then there was an independent and adequate state rule to support the judgment, and the claim is considered procedurally defaulted. *Id.* at 735.

Federal courts cannot consider procedurally defaulted claims unless the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  Cause for procedural default exists when "some objective factor external to the defense impeded counsel's efforts to comply with the State procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  And actual prejudice exists where the cause for default "worked to [the petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

### 3.    Section 2254(d)

If a petitioner shows that his claim is exhausted and not procedurally defaulted, or that the procedural default is excused, the federal court may grant habeas relief only if the petitioner satisfies the standard outlined in § 2254(d)(1) or (2).  Under the first subsection, the petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law."  28 U.S.C. § 2254(d)(1).  For a state court decision to be "contrary to" clearly established federal law, "the state court [must] arrive at a conclusion opposite to that reached by the Supreme Court on a question of law or . . . decide[ ] a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Hameen v. Delaware*, 212 F.3d 226, 235 (3d Cir. 2000) (cleaned up).  A state court decision

involves an "unreasonable application of" clearly established federal law when "[it] resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.* at 890. This occurs when the state court "identifie[s] the correct governing legal rule . . . but unreasonably applie[s] it to the facts of the particular . . . case" or when the state court "unreasonably extend[s] a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuse[s] to extend that principle to a new context where it should apply." *Williams,* 529 U.S. at 407.

Should the petitioner fail to satisfy § 2254(d)(1), federal habeas relief will be denied unless he can show under § 2254(d)(2) that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). There is a presumption of correctness for factual determinations made by state court judges, and the petitioner bears the burden of rebutting this presumption by clear and convincing evidence. *Id.* § 2254(e)(1); *see also Lambert v. Blackwell,* 387 F.3d 210, 234 (3d Cir. 2004).

## III.    Discussion

As discussed above, Burnett objects to the dismissal of each claim in his petition: (1) trial counsel was constitutionally ineffective for not arguing self-defense or requesting a self-defense jury instruction; (2) trial counsel was constitutionally ineffective for failing to object to the lack of a no adverse inference instruction; (3) his sentence is illegal because it is based on an unconstitutional mandatory minimum; and (4) there was insufficient evidence to support his aggravated assault conviction. (Doc. No. 25 at 2–10.) Under each claim, he lodges more specific objections. The Court addresses each objection in turn.

A.       **Ineffective Assistance of Trial Counsel Claims**

1.       **Legal Standard**

The Court first turns to Burnett's ineffective assistance of trial counsel claims.  The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  Nonetheless, the Sixth Amendment "does not guarantee the right to perfect counsel; it promises only the right to effective assistance."  *Burt v. Titlow*, 571 U.S. 12, 24 (2013) (citation omitted).  To show that counsel was constitutionally ineffective under the Sixth Amendment, a defendant must show: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687; *see also United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005) ("[A] criminal defendant may demonstrate that his representation was constitutionally inadequate by proving: (1) that his attorney's performance was deficient, i.e., unreasonable under prevailing professional standards; and (2) that he was prejudiced by the attorney's performance.").

Under the first prong, counsel's performance was deficient if they "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  The broad phrase "effective assistance" encompasses counsel's "overarching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution."  *Id.* at 688.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.

Under the second prong, the defendant establishes prejudice by "show[ing] that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  In other words, an "error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.  In making this determination, courts "must consider the totality of the evidence before the judge or jury." *Id.* at 695.

The Third Circuit has "endorsed the practical suggestion in *Strickland* to consider the prejudice prong before examining the performance of counsel prong 'because this course of action is less burdensome to defense counsel.'" *Booth*, 432 F.3d at 546 (quoting *United States v. McCoy*, 410 F.3d 124, 132 n.6 (3d Cir. 2005)).

## 2.    Analysis

In her R&R, Judge Carlos recommended that the Court dismiss Burnett's ineffective assistance of trial counsel claims.  (Doc. No. 20 at 9–10.)  Judge Carlos found that both claims have been "presented to the state courts and adjudicated on the merits," so Burnett can get habeas relief only if those state court decisions were "contrary to or an unreasonable application of clearly established law, or based on an unreasonable determination of the facts." (*Id.* at 11, 15–16.)  After carefully analyzing Burnett's arguments and the Commonwealth's counterarguments, Judge Carlos found that neither ineffective counsel claim could meet this standard.  Burnett now objects to these conclusions.  The Court addresses his specific objections to each ineffective counsel claim below.

*Claim 1: Trial counsel was ineffective for failing to argue self-defense or request a self-defense jury instruction*.  Burnett first objects to Judge Carlos's R&R, alleging that she did not consider his argument that "trial counsel was ineffective for failing to request a jury instruction on self-defense." (Doc. No. 25 at 2.)  But Judge Carlos explicitly rejected Burnett's argument

that "the facts elicited at trial supported such a defense, and therefore counsel should have invited the jury to consider it." (Doc. No. 20 at 10.) In his objections, Petitioner tries to slice his claim too thinly, arguing that even if trial counsel acted reasonably in not pursuing a self-defense claim, trial counsel acted unreasonably in failing to request a self-defense instruction. (Doc. No. 25 at 2–4.) Not so. If trial counsel made a reasonable tactical decision not to argue self-defense at trial, it follows that counsel also made a reasonable decision not to request a self-defense jury instruction. This is especially true when self-defense was not argued at trial.

An independent review of Burnett's claim reveals the correctness of Judge Carlos's findings. Burnett has properly exhausted this claim because he gave the "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Pennsylvania, this requirement can be met by "presenting the federal claim through the Superior Court on . . . collateral review." *Hawes v. Mahalley*, No. 17-CV-5316, 2018 WL 10602611, at *4 (E.D. Pa. Nov. 1, 2018), *report and recommendation adopted*, No. 2:17-CV-5316, 2020 WL 1508267 (E.D. Pa. Mar. 30, 2020) (citing *Lambert v. Blackwell*, 387 F.3d 210, 233–34 (3d Cir. 2004)).

Here, Burnett raised this claim in his counseled PCRA petition. *See Burnett III*, 2019 WL 1977340, at *3. Though this claim was originally denied by the PCRA court, the Superior Court vacated this decision because there was at least some trial evidence that supported a self-defense claim.[3] *Id.* at *6. Given this evidence, the Superior Court held that an evidentiary hearing was

---

[3] As the Superior Court observed, there was undisputed evidence that Burnett was shot on the night in question. Detective Scott, one of the first responders to the shooting, testified that Burnett had told him that he had been shot, and Sergeant McAlorum testified that he saw Burnett had been shot in the upper leg. *Burnett III*, 2019 WL 1977340, at *6. In addition, the Commonwealth's key witness, Ms. Schrader, testified that *after* she had heard gunshots, she saw two people fleeing from Burnett and Burnett firing in their direction. *Id.*

needed "to determine if trial counsel had a reasonable basis upon which to not pursue a self-defense claim on [Burnett's] behalf, and whether there is a *reasonable probability* that the outcome of the trial would have been different if the jury had the option available of finding that [Burnett] acted in self-defense." *Id.*

During the evidentiary hearing before the PCRA court, both Burnett and his trial counsel testified. *Burnett II*, 260 A.3d at 159. Burnett's trial counsel said that he and Burnett had discussed self-defense twice, but both times Burnett insisted that he did not have a gun that night and told counsel not to pursue a self-defense claim. *Id.* Burnett also accused counsel of "trying to throw him underneath the bus by trying to have him admit he had a gun and presenting a self-defense claim." *Id.* (internal quotations omitted). At the hearing, Burnett claimed that he and his lawyer never talked about self-defense. *Id.* Ultimately, the PCRA court credited counsel's testimony and dismissed the petition. *Id.*

On appeal, the Pennsylvania Superior Court affirmed. *Id.* It agreed with the PCRA court that because Burnett told his trial counsel that he did not have a gun the night in question and that he did not want trial counsel to pursue a self-defense claim, trial counsel had a reasonable basis for not arguing that Burnett had acted in self-defense or asking for a self-defense instruction. *Id.* Plus, the Superior Court seconded the PCRA court's conclusion that trial counsel's decision to follow his client's preference was "understandable" because an alternative self-defense theory might have confused the jury. *Id.*

Since the state court ruled on the merits of this claim, this Court may grant habeas relief only if Burnett satisfies the standard outlined in § 2254(d)(1) or (2). Under the first subsection, he must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). And under the second

subsection, Burnett must show that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

Burnett cannot meet either standard for this claim. To start, though the state courts evaluated Burnett's ineffective assistance claim under Pennsylvania law, the Third Circuit "has repeatedly recognized that Pennsylvania's test for ineffective assistance of counsel is consistent with the Supreme Court's decision in *Strickland* because it requires findings as to both deficient performance and actual prejudice." *Tyson v. Superintendent Houtzdale SCI*, 976 F.3d 382, 391 (3d Cir. 2020) (internal quotations omitted). So, the state court's decision was consistent with, and not contrary to, clearly established federal law.

Nor was the state court's decision an unreasonable application of *Strickland*. Under *Strickland*, a defendant must show that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. The Pennsylvania Superior Court found that trial counsel's performance was not deficient, relying heavily on the PCRA court's credibility determination. *Burnett II*, 260 A.3d at 159. Trial counsel testified that he had followed his client's wish not to pursue a self-defense claim because Burnett insisted that he did not have a gun on the night in question. *Id.* Instead, trial counsel tried to poke holes in the testimony of the sole eyewitness to the shooting. *Id.* Thus, the state court reasonably found that trial counsel made an objectively reasonable strategic choice not to argue self-defense or request a self-defense jury instruction. *Strickland*, 466 U.S. at 689–91 (explaining that counsel's informed, strategic choices deserve deference and that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment" of counsel's "litigation decisions").

Burnett resists this conclusion, arguing that he was entitled to a self-defense jury

instruction because there was evidence that could have supported a self-defense instruction. (Doc. No. 25 at 2–4.) True, there was some trial evidence that could have supported a self-defense instruction. But the mere existence of *some* evidence of self-defense does not mean that trial counsel's decision not to request a self-defense instruction was unreasonable. Indeed, trial counsel credibly testified that he had considered this defense but made a strategic choice not to pursue it given the wishes of his client. *Cf.* 3 Wayne LeFave et al., *Crim. Proc.* § 11.6(a) (4th ed. Dec. 2023 update) ("[W]here the law is unclear, or even where it is clear and places ultimate authority with counsel, a defense lawyer can always follow his or her client's wishes, provided that path does not require the lawyer to violate standards of professional responsibility. To do so rarely will open the door to a successful postconviction claim of ineffective assistance of counsel based on the attorney's failure to insist upon the attorney's best professional judgment.").

Last, Burnett cannot show that the state court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). After an evidentiary hearing, the PCRA court found that trial counsel's testimony was credible. For a determination like this, there is a presumption of correctness, and Burnett bears the burden of rebutting this presumption by clear and convincing evidence. *Id.* § 2254(e)(1); *see also Lambert*, 387 F.3d 210, 234 (3d Cir. 2004). Here, he fails to present any such evidence. Thus, Burnett is not entitled to relief based on this claim.

*Claim 2: Trial counsel was ineffective for failing to object to the lack of a no adverse inference instruction*. Petitioner next objects to Judge Carlos's recommendation that this Court dismiss his ineffective assistance of counsel claim based on trial counsel's failure to object to the lack of a no adverse inference jury instruction, even though counsel had requested that this instruction be given. (Doc. No. 25 at 5.) More specifically, Burnett objects to Judge Carlos's

finding that he has not established that he was prejudiced by trial counsel's failure to object to this omission. (*Id.*) As explained below, the Court overrules Burnett's objection.

To begin, the Court finds that Burnett has properly exhausted this claim. He first presented it in his PCRA petition. *Burnett II*, 2019 WL 1977340, at *3. After the PCRA court rejected his claim, he appealed to the Superior Court. There, the Superior Court affirmed because Burnett "essentially present[ed] an argument that trial counsel was *per se* ineffective for . . . failing to object to the absence of a 'no adverse influence' jury charge." *Id.* at *4. This argument was foreclosed by state court precedent, and Burnett presented no other argument as to "how he was prejudiced in the context of this case." *Id.* Thus, the Superior Court rejected this claim as "meritless." *Id.*

Like his first claim, Burnett is entitled to federal habeas relief on this claim only if the state court's decision was contrary to or an unreasonable application of clearly established federal law or the decision involved an unreasonable determination of the facts. 28 U.S.C. § 2254(d). Neither standard is met here. The Pennsylvania Superior Court correctly applied the prejudice prong of *Strickland* and concluded that Burnett's claim rested on the erroneous presumption that prejudice should be presumed from counsel's failure to object to the lack of a no adverse inference instruction. *See Burnett III*, 2019 WL 1977340, at *3; *cf. Howard v. Horn*, 56 F. Supp. 3d 709, 732 (E.D. Pa. 2014) ("The Third Circuit has clearly held that a failure to give a no-adverse-inference instruction in violation of *Carter* is not structural error per se, but is subject to a harmless error analysis."). Without any additional argument from Burnett about how he was prejudiced by counsel's error, the Pennsylvania Superior Court reasonably rejected this claim.

Though Burnett objects to Judge Carlos's recommendation, he still does not meaningfully

engage in the appropriate standard of review for this claim.  The pivotal question is whether the Pennsylvania Superior Court unreasonably applied *Strickland* in rejecting this claim.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotations omitted).  Here, Burnett presents no argument as to why the Superior Court's decision was an unreasonable application of *Strickland*.  Thus, he is not entitled to relief.[4]

\* \* \*

In sum, the Court finds that the state court reasonably applied *Strickland* and dismissed Burnett's ineffective assistance of counsel claims.  The Pennsylvania Superior Court reasonably rejected his first claim under *Strickland*'s first prong for a lack of deficient performance.  The state court also reasonably rejected his second claim under *Strickland*'s second prong for a lack of prejudice.  Thus, the Court overrules Burnett's objections related to his ineffective assistance of counsel claims and adopts and approves the portion of the R&R dismissing those claims with prejudice and without an evidentiary hearing.

---

[4] Petitioner also objects to Judge Carlos's alternative conclusion that his second ineffective assistance of counsel claim fails even under de novo review.  (Doc. No. 25 at 5–6.)  More specifically, he challenges Judge Carlos's decision not to consider evidence of self-defense under the prejudice prong of *Strickland* when evaluating this claim.  This objection fails for two reasons.  For one, it still does not address the pivotal question of whether the state court reasonably rejected his ineffective counsel claim under *Strickland*.  For another, this objection requires the Court to not only engage in Monday morning quarterbacking, but also to rewrite the game script.  If the Court were to follow Petitioner's argument, it must jump through multiple layers of hypotheticals to then assess prejudice in a theoretical trial where trial counsel had argued self-defense and where the jury had been instructed on it.  The Court need not do so because trial counsel acted reasonably in not arguing self-defense.  Given what was argued and presented at trial, the Court agrees with Judge Carlos that there is not a reasonable probability that but for trial counsel's failure to object to the lack of a no adverse inference charge, the verdict would have been different.

**B.      Illegal Sentence Claim**

Burnett next objects to Judge Carlos's finding that the state court reasonably rejected his claim that his sentence was unconstitutional.  (Doc. No. 25 at 6.)  He specifically objects to the conclusion reached by Judge Carlos that the sentencing judge did not take the mandatory minimum guidelines into consideration when he sentenced Burnett.  (*Id.*)  For the reasons below, the Court disagrees and overrules Burnett's objections.

First, the Court finds that Burnett has properly exhausted this claim.  In his counseled PCRA petition, he argued that his sentence was illegal because he was subject to an unconstitutional mandatory minimum sentence.  *Burnett III*, 2019 WL 1977340, at *3.  After the PCRA court rejected this claim, the Superior Court affirmed.  *Id.*  As the Superior Court acknowledged, Burnett was subject to a mandatory minimum sentence based on a statute that was later struck down as unconstitutional in light of *Alleyne v. United States*, 570 U.S. 99 (2013) (holding that facts that increase the penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt).  *Id.* at *7.  Yet, even though the sentencing court "was aware of the mandatory minimum sentence," it relied on the pre-sentence investigation report and counsel's argument to impose a sentence above the guidelines range.  *Id.* at *7 (internal quotations omitted).  Thus, the Superior Court declined to vacate Burnett's sentence.  *Id.* (citing *Commonwealth v. Zeigler*, 112 A.3d 656 (Pa. Super. 2015) (declining to vacate a sentence that was subject to the same mandatory minimum because the court sentenced defendant based on the guidelines, not the mandatory minimum)).

Like his ineffective counsel claims, Burnett is entitled to federal habeas relief on this claim only if the state court's decision was contrary to or an unreasonable application of clearly established federal law or the decision involved an unreasonable determination of the facts.  28 U.S.C. § 2254(d).  Neither standard is met here.  Under § 2254(d)(1), Burnett cannot show that

the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Id.* The state court properly applied *Alleyne* and its progeny, finding that although Burnett was subject to an unconstitutional mandatory minimum, this error had no effect on his sentence. True, the sentencing court mentioned that the recommended guidelines sentence would be "just above the five-year mandatory minimum." (Doc. No. 18-2 at 8.) But the court continued and said that the guidelines did not adequately reflect the seriousness of Burnett's criminal history. (*Id.*) So, the court went above both the guidelines and the mandatory minimum to sentence Burnett to a sentence of seven to twenty years for aggravated assault. (*Id.*) Thus, the Superior Court reasonably found that any *Alleyne* error had no effect on his sentence because the court relied on constitutionally valid reasons to reach its sentence. *Burnett III*, 2019 WL 1977340, at *7; *see also Johnson v. Mahally*, No. CV 18-1578, 2019 WL 1285465, at *5 (E.D. Pa. Mar. 20, 2019) (finding an *Alleyne* error harmless because the transcript made clear that the sentencing court would have sentenced petitioner to the same sentence irrespective of the mandatory minimum).

Under § 2254(d)(2), Burnett cannot show that the Superior Court made an unreasonable determination of the facts. Though he re-raises his argument that the sentencing court gave serious consideration to the mandatory minimum, the sentencing transcript belies his claim. (*See* Doc. No. 18-2 at 8.) Plus, the state court's factual determinations enjoy a presumption of correctness, and Burnett cannot rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This is especially true when the transcript supports the Superior Court's conclusion that the trial court reached its sentence based on constitutionally valid reasons that were independent of the mandatory minimum. Thus, the Court overrules Burnett's objections and adopts and approves Judge Carlos's recommendation that this Court dismiss his sentencing

claim with prejudice and without an evidentiary hearing.

### C.    Sufficiency of the Evidence

Burnett last objects to Judge Carlos's conclusion that his sufficiency of the evidence challenge should be dismissed with prejudice.  (Doc. No. 25 at 7–9.)  In his objections, he does not contest that this claim is procedurally defaulted because, on direct appeal, the Superior Court dismissed it on independent and adequate state law grounds.[5]  Instead, he now tries to assert a new claim that his PCRA counsel was ineffective for failing to assert that his trial counsel was ineffective for failing to properly present his sufficiency of the evidence challenge.  (*Id.*)  As explained below, Burnett's new claim fails.

In his habeas petition, Burnett argued only that there was insufficient evidence to support his aggravated assault conviction.  (Doc. No. 1-1 at 30–34.)  He "never raised an ineffective assistance of counsel claim on this issue—either trial counsel or Post Conviction Relief Act Counsel—in his habeas petition."  *Moore v. Zaken*, No. CV 20-4323, 2023 WL 8622334, at *10 (E.D. Pa. Dec. 13, 2023).  In his objections, Burnett raises for the first time a claim that his collateral review counsel was ineffective for failing to raise an ineffective trial counsel claim based on trial counsel's failure to properly present the sufficiency of the evidence claim.  (Doc. No. 25 at 7–9.)  But under Local Civil Rule 72.1(IV)(c), "[a]ll issues . . . shall be presented to the magistrate judges, and unless the interest of justice requires it, new issues . . . shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge."  Local R. Civ. P. 72.1(IV)(c).  Here, Burnett gives no

---

[5] More specifically, the Superior Court denied this claim under Pennsylvania Rule of Appellate Procedure 1925(b), which requires appellants to specify the elements upon which the evidence is insufficient.  *Burnett I*, 2014 WL 10979624, at *3.  "[T]his state law ground is adequate to support the state judgment, as Pennsylvania courts regularly and routinely enforce Rule 1925(b)."  *Johnson v. Tice*, No. CV 16-927, 2017 WL 4875282, at *7 (E.D. Pa. Aug. 24, 2017), *report and recommendation adopted*, No. CV 16-927, 2017 WL 4868557 (E.D. Pa. Oct. 27, 2017).

explanation as to why this claim could not have been made in his habeas petition or otherwise presented to Judge Carlos. So, on this ground alone, the "the interest of justice does not require consideration of this new claim." *Moore*, 2023 WL 8622334, at *10; *see Adkins v. Wetzel*, No. 13-3652, 2014 WL 4088482, at *3 (E.D. Pa. Aug. 18, 2014) ("[N]ew issues and evidence shall not be raised after the filing of the Magistrate Judge's Report and Recommendation if they could have been presented to the magistrate judge." (internal quotations omitted)); *Kightlinger v. Pennsylvania*, No. CIV.A. 11-936, 2013 WL 4504382, at *2 (W.D. Pa. Aug. 22, 2013) (reasoning that if the court were to consider issues raised for the first time in an objection to a report and recommendation, that "would reduce the proceedings before the magistrate[ ] Judge to a mere dress rehearsal, which is contrary to the very reason for having magistrate judges").

## IV.    CONCLUSION

For the reasons discussed above, the Court overrules Burnett's objections and adopts the R&R. Burnett's claims are dismissed with prejudice and without an evidentiary hearing.[6] An appropriate Order follows.

---

[6] The Court will not issue Burnett a certificate of appealability since he has failed to make a "substantial showing of the denial of a constitutional right" such that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner." *Mathias v. Superintendent Frackville SCI*, 876 F.3d 462, 474 (3d Cir. 2017) (quoting 28 U.S.C. § 2253(c)(2) and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).